**IN THE COURT OF APPEALS OF IOWA**

No. 15-1339
Filed November 25, 2015

**IN THE INTEREST OF H.S.H.,**
**Minor Child,**

**T.L.M., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Union County, Monty W. Franklin, District Associate Judge.

A mother appeals the juvenile court's termination of her parental rights to the child, H.S.H.  **AFFIRMED.**

Michael A. Beal, Urbandale, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Todd G. Nielsen of Kenyon & Nielsen, P.C., Creston, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

A mother appeals the juvenile court's termination of her parental rights to her child, H.S.H. She argues both that the State failed to prove the grounds for termination by clear and convincing evidence, and that a statutory factor exists to prevent termination. We conclude that clear and convincing evidence supported termination, termination is in the best interest of the child, and that the statutory factor does not preclude the termination. We therefore affirm.

## I. Background Facts and Proceedings

H.S.H. was born on July 1, 2013. She first came to the attention of the Iowa Department of Human Services (DHS) in the spring of 2014, when reports of child abuse were lodged against both her mother and her mother's boyfriend, alleging they had smoked methamphetamine (meth) with the child present. Child abuse assessments were completed by May 2014, at which point DHS determined two allegations of denial of critical care against the mother were founded—one for failure to provide adequate shelter, and the other for failure to provide proper supervision.

At the time the abuse was reported, H.S.H. and her mother were staying in the basement of the mother's boyfriend's grandmother's house. The DHS investigation revealed a litany of problems with the basement's suitability as a living space for an infant: it was accessible only via trapdoor and a set of very steep stairs; it was small and unclean; it doubled as a utility and storage area, with H.S.H.'s filthy bassinet located next to the water heater; it was crammed full of boxes, furniture, bags of clothing, a bed, and other items, leaving no open area for H.S.H. to be on the floor; it had no windows to allow light in or to allow for

escape in case of fire; and it had no smoke detectors, despite the fact that the mother and boyfriend smoked cigarettes inside. Additionally, drug paraphernalia—tubes used to snort drugs—were found in the basement. The tubes were accessible to H.S.H., and tested positive for meth residue, which could have caused her serious harm if ingested. The mother denied having used meth and denied that the tubes were hers, but also refused to submit to drug testing.

H.S.H. suffered developmental delays as a result of the unsafe conditions. For example, the floor was littered with debris that constituted a choking hazard; HSH was kept in her crib and thus had not learned to crawl. Follow-up regarding H.S.H.'s medical records revealed that she had not been to a doctor for a routine well-child check since she was two weeks old. To address these issues as well as the mother's own deficiencies, a number of services were offered to the family by DHS. However, the mother failed to participate actively in the services provided and generally showed a lack of motivation to make any meaningful changes. She did move out of the basement residence and into her own parent's home (because her boyfriend was now in prison), and also finally participated in a substance abuse evaluation in September 2014 during which she admitted to using meth.

Otherwise, the mother did not make significant progress, and so on September 18, 2014, H.S.H. was adjudicated to be a child in need of assistance (CINA) as defined by Iowa Code sections 232.2(6)(b), (c)(2), (g), and (n). (2013). H.S.H. was removed from the mother's custody and placed in the temporary legal custody of the child's paternal grandparents. She could not be placed with

her biological father because he was incarcerated. During subsequent months, as CINA review hearings were ongoing and DHS was overseeing the mother's activity, the mother's participation in the offered services was inconsistent. The mother's substance abuse problems persisted, even though she had become pregnant again. On January 9, 2015, the mother gave birth via a scheduled Caesarean section to a child that tested positive at birth for both meth and amphetamines. During this time period, the mother's visitation with H.S.H. was both limited and supervised due to her lack of progress with services. She attended most of those supervised visits, but often seemed distant and disinterested in H.S.H., only interacting with the child when prompted to do so.

The State filed a petition for termination of parental rights of both the mother and the biological father on April 9, 2015. As the termination hearing approached, the mother made some changes in her life. She moved out of her parents' home and into an apartment, began consistently participating in substance abuse treatment, and began working. However, even these last-ditch efforts were not wholly positive. The apartment, which the mother had lived in for only a month at the time of the June 1, 2015 termination hearing, was shared with the mother's new boyfriend, who had a substance abuse problem and used meth. The substance abuse treatment, which the mother had been participating in consistently for only about a month, was potentially undermined by her ongoing relationship with an active drug user. The job, which the mother had begun so recently that at the time of the termination hearing she had not yet received a paycheck, was apparently not meant to be permanent, because the mother already had plans to quit it for another.

On July 22, 2015, the juvenile court issued an order terminating the parental rights of both of H.S.H.'s parents. The mother appeals.

## II. Standard of Review

We conduct a de novo review of proceedings terminating parental rights. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *Id.* We give weight to the factual determinations of the juvenile court, particularly regarding the credibility of witnesses, although we are not bound by them. *Id.* The primary consideration of our review is the best interests of the child. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).

## III. Analysis

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *Id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *Id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory factors set forth in section 232.116(3) should serve to preclude termination. *Id.*

The juvenile court terminated the mother's parental rights on six different grounds, as set forth in Iowa Code section 232.116(1)(b), (d), (e), (h), (i), and (*l*). (2015). When a juvenile court terminates parental rights on more than one ground, as it has in this case, we may affirm the order on any of the statutory grounds supported by the record. *D.W.*, 791 N.W.2d at 707. The mother's appeal challenges the sufficiency of the evidence to support the juvenile court's "clear and convincing" findings under sections 232.116(1)(b), (d), (e), (i), and (*l*); her appeal does not challenge the juvenile court's finding under section 232.116(1)(h).[1] Thus, although she argues that the evidence presented at the termination hearing was insufficient to satisfy five of the six grounds for termination, by not challenging the sixth, the mother has conceded that evidence presented at the termination hearing was sufficient to establish the basis for termination set forth in section 232.116(1)(h) by clear and convincing evidence. That single unchallenged ground is enough to affirm, and so the first of our three steps of analysis requires no further discussion.

With respect to the second and third steps of analysis, the mother argues that because termination should be viewed as an outcome of last resort, and because H.S.H. was placed in the temporary legal custody of relatives (her grandparents), section 232.116(3)(a) applies and termination was improper and not in the child's best interests under section 232.116(2). On our de novo review,

---

[1] At the termination hearing, the mother requested additional time to prepare for reunification. However, she does not raise that issue on appeal except to say that because 232.116(1)(i) and (1)(*l*) allow for "a reasonable period of time" to remediate her deficiencies, the State could not have proved those grounds. In any event, we find on our de novo review that the evidence does not support a likelihood that the child could be returned to the mother's care within a reasonable period of time.

we agree with the juvenile court's findings that termination of the mother's parental rights is in the child's best interests. The mother's life continues to be unstable, and her daughter cannot be returned to her custody at this time or in the foreseeable future. H.S.H. will be best served by the stability of her paternal grandparents, with whom she has lived since she was removed from her mother's custody. The couple has indicated their desire to permanently integrate H.S.H. into their home. They have a documented history of providing the child safe and stable care, and H.S.H. has developed significantly under their care.

We also find termination to be appropriate here, even though the child was being cared for by her paternal grandparents. Section 232.116(3) provides a set of statutory factors weighing against termination after it has already been determined that termination is in the child's best interests. Section 232.116(3)(a) provides that the juvenile court "need not terminate the relationship between the parent and child if . . . [a] relative has legal custody of the child." Placement with relatives is not equivalent to being in the legal custody of relatives for purposes of section 232.116(3)(a). *See A.M.*, 843 N.W.2d at 113. The language of 232.116(3) is permissive, so a juvenile court *may* choose to forego termination if any of the listed circumstances are satisfied, but is not obligated to do so. *See In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). Although H.S.H. was placed in the temporary legal custody of her grandparents, the factor is permissive and does not weigh against the termination order here.

**AFFIRMED.**